**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**UNITED STATES OF AMERICA**                                                    **PLAINTIFF**

**V.**                                   **CASE NO. 5:19-CR-50033-TLB**

**JODY DOUGLAS DAVIS and**
**PHILLIP VINCENT RIDINGS**                                         **DEFENDANTS**

**OPINION AND ORDER**

The Government has charged Defendants Jody Douglas Davis and Phillip Vincent Ridings with multiple counts in a Superseding Indictment (Doc. 38).  Specifically, both Mr. Davis and Mr. Ridings have been jointly charged with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count 1), wire fraud and aiding and abetting wire fraud in violation of 18 U.S.C. § 1343 and § 2 (Counts Two, Five, Seven, and Eight), and money laundering in violation of 18 U.S.C. § 1957 and § 2 (Counts Six and Nine).  Separate charges for money laundering have also been brought against Mr. Davis (Count Four) and Mr. Ridings (Count Three).  The charged conduct involves Mr. Davis and Mr. Ridings's alleged scheme to defraud investors by making materially false and fraudulent representations to solicit investments in their business, Dragonfly Industries International, LLC ("Dragonfly"), and using those investments for personal expenses.  This matter is scheduled for a joint jury trial to commence the week of August 23, 2021.  Several motions are pending, which are addressed below.

## I.  BACKGROUND

This case has a long history, due mostly to the intervention of the COVID-19 pandemic.  The reader can find a more detailed account of the prior procedural history of this case in the Court's July 9, 2020 Order (Doc. 113).  In lieu of repeating that history

here, the Court begins by offering a brief overview of how this matter came to be set for trial in August 2021.

The original Indictment in this case was filed on May 8, 2019, and a jury trial was set for July 10, 2019 (Doc. 16).  The jury trial was initially continued until January 7, 2020 (Doc. 26), and it was subsequently continued until April 1, 2020 (Doc. 36).  On January 15, 2020, a Superseding Indictment was filed, dropping three counts against Mr. Davis from the original Indictment and alleging a new conspiracy count against both Mr. Davis and Mr. Ridings (Doc. 38).  The case proceeded towards the April 1, 2020, trial date, but then the COVID-19 pandemic emerged, which initially caused the Court to continue the trial until June 23, 2020 (Doc. 80).  But as the reader is aware, the pandemic situation had only worsened by last summer, forcing the Court to continue the trial to September 8, 2020, then to August 16, 2021, and finally to its present setting on August 23, 2021.  *See* Docs. 107, 125, 127.

The parties have filed several motions that are ripe for decision: (1) the Government's Motion Requesting a Preliminary Ruling on the Admissibility of Mr. Ridings's Signed Plea Agreement with Revised Redactions (Doc. 117); (2) Mr. Ridings's Motion to Reject Intrinsic Evidence or, in the alternative, Rule 404(b) Evidence; (3) Mr. Ridings's Motion to Dismiss Due to COVID-19 (Doc. 126); Mr. Ridings's Motion in Limine to Exclude Belcan Evidence and Testimony and Brief in Support (Doc. 132); Mr. Ridings's Motion to Dismiss Due to the COVID-19 Virus (4 Variants) (Doc. 134); the Government's Motion in Limine (Doc. 137); Mr. Davis's Motion in Limine or for Severance (Doc. 138), and the Government's Motion for Witness to Testify at Trial Via Live Two-Way Video

Conferencing (Doc. 146).  Below, the Court rules on each of these pending Motions.  The Court has grouped together related motions for the reader's convenience.

## II.  DISCUSSION

### A.  Admissibility of Mr. Ridings's Signed Plea Agreement

Two of the pending motions relate to the admissibility of Mr. Ridings's signed plea agreement.  The first of these is the Government's Motion (Doc. 117) seeking a ruling that the edited plea agreement is admissible under the doctrine described in *Bruton v. United States*, 391 U.S. 123 (1968).  The second is Mr. Davis's Motion in Limine (Doc. 138), wherein he argues that admitting the plea agreement would violate *Crawford v. Washington*, 541 U.S. 36, 59 (2004).  Mr. Davis contends that the Court should exclude the plea agreement or, in the alternative, sever the defendants' trials.  He also submits that the plea agreement is unfairly prejudicial under Rule 403 and that no limiting instruction can cure such prejudice.  For the reasons and to the extent explained below, the Court **GRANTS** the Government's Motion seeking a preliminary ruling on the admissibility of the plea agreement (Doc. 117) and **DENIES** Mr. Davis's Motion in Limine (Doc. 138).

#### 1.  *Bruton* Issues

As explained in more detail in its prior Order, *see* Doc. 113, Mr. Ridings signed a plea agreement that includes certain factual admissions, but at the last moment reneged on his deal with the Government and opted to continue to trial.  The Government would like to admit a copy of that plea agreement to use it against Mr. Ridings at trial, so the Government previously sought a ruling from the Court that Mr. Ridings waived his rights

under Federal Rule of Evidence 410,[1] which the Court granted.  *See* Doc. 113.  At the same time, Government also sought a ruling that the *form* of the plea agreement did not violate the Confrontation Clause.  Applying the doctrine set forth in *Bruton* and its progeny, the Court found that the proposed redactions to the plea agreement impermissibly "pointed a finger" at Mr. Davis, and the Court directed the Government to try again.  *See* Doc. 113, at 7–9.  The Government then edited the plea agreement and filed its present Motion (Doc. 117), seeking a ruling that the revised plea agreement is admissible. Counsel for Mr. Davis pointed out that there was a remaining reference to Mr. Davis; the Government removed that reference and submitted another revised plea agreement that omits any references to Mr. Davis.  *See* Doc. 140-1.  The Court now turns to discuss the admissibility of that edited plea agreement.

The Government hopes its edits to the plea agreement avoid a constitutional problem raised by the fact that the factual basis of Mr. Ridings's plea incriminates Mr. Davis.  The Supreme Court has long recognized that a defendant is deprived of his rights under the Confrontation Clause when a non-testifying co-defendant's confession that incriminates the defendant is introduced at their joint trial, even if the jury is instructed to consider that confession only against the non-testifying co-defendant.  *Bruton*, 391 U.S. at 128.  When such admissions are made in writing, they "may be avoided through redaction if a cautionary jury instruction is given, if the redactions are neutral, and if they do not obviously directly refer to the defendant."  *United States v. Coleman*, 349 F.3d

---

[1] Under Rule 410, "a guilty plea that was later withdrawn" is inadmissible.  Fed. R. Evid. 410(a)(1).  However, a defendant may waive his Rule 410 rights "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily."  *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995).

1077, 1085 (8th Cir. 2003) (citing *Gray v. Maryland*, 523 U.S. 185, 196 (1998)).  "Obvious redactions, however, such as substituting a defendant's name with a 'blank space' or the word 'deleted'" can create a *Bruton* violation.  *United States v. Mueller*, 661 F.3d 338, 348 (8th Cir. 2011) (citing *Gray*, 523 U.S. at 192).

The Court must decide whether the edits to Mr. Ridings's plea agreement are so "obvious" that they essentially "point[] a finger" at Mr. Davis.  *United States v. Logan*, 210 F.3d 820, 823 (8th Cir. 2000).  In the Court's view, the edited plea agreement no longer directly inculpates Mr. Davis.  *See* Doc. 140-1.  There are no explicit references to Mr. Davis.  Further, there are no black redaction marks or blank spaces, so it is impossible for a juror to deduce that anyone has made changes to the plea agreement.  Accordingly, the Court concludes that the edited plea agreement proposed by the Government has eliminated any potential *Bruton* violation.  As a result, the Court declines to exclude the edited plea agreement under *Bruton*.

## 2.  *Crawford* Issues

In his Motion in Limine (Doc. 138), Mr. Davis raises a separate but related argument challenging the admissibility of the plea agreement.  He argues that if Mr. Ridings does not testify, he will have no opportunity to cross-examine Mr. Ridings about his admissions in the plea agreement.  Thus, Mr. Davis argues that the admission of the plea agreement—regardless of redactions—is a violation of the rule set forth in *Crawford*, where the Supreme Court held that, "[t]estimonial statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  541 U.S. at 59.  As a result, Mr. Davis argues for the exclusion of the edited plea agreement or severance of the trials.

At its core, Mr. Davis's argument is that *Crawford* overruled *Bruton*. The Court disagrees. The Eighth Circuit has stated that, "*Crawford* did not overrule *Bruton* and its progeny . . . ." *United States v. Williams*, 429 F.3d 767, 773 n.2 (8th Cir. 2005).[2] Moreover, other circuit courts have reached the same conclusion. *See United States v. Straker*, 800 F.3d 570, 601 n.9 (D.C. Cir. 2015) (noting that "*Bruton*-ized" statements do not violate *Crawford* where they are deployed against the declarant and not against an objecting co-defendant); *United States v. Ramos-Cardenas*, 524 F.3d 600, 609–10 (5th Cir. 2008) (applying *Bruton* and finding that it, not *Crawford*, governs when an admission is admitted against the speaker-defendant, not a co-defendant); *United States v. Vasilakos*, 508 F.3d 401, 407–08 (6th Cir. 2007) (applying *Bruton* to admission of co-defendant's redacted statement); *United States v. Rodriguez-Duran*, 507 F.3d 749, 770 (1st Cir. 2007) (noting that *Crawford* only applies if a co-defendant's admission is used against another co-defendant who cannot cross-examine the admission); *United States v. Lung Fong Chen*, 393 F.3d 139, 150 (2d Cir. 2004) (holding that where *Bruton* inquiry was satisfied, there could be no *Crawford* error).

Pursuant to these authorities, the Court finds that admitting the edited plea agreement against Mr. Ridings does not violate Mr. Davis's rights under the Confrontation Clause. "[W]hile *Crawford* certainly prohibits the introduction of a codefendant's out-of-court statement against the other defendants in a multiple-defendant trial, it does not signal a departure from the rules governing the admittance of such a statement against the speaker-defendant himself, which continue to be provided by *Bruton* . . . ." *Ramos-*

---

[2] Notwithstanding Mr. Davis's representations in his Motion in Limine, *see* Doc. 138, p. 1 n.2, multiple courts have addressed this issue on various occasions.

*Cardenas*, 524 F.3d at 609–10.  In short, *Crawford*'s holding is that a defendant has a right to cross-examine witnesses *against* him, but as discussed in the prior section, the edited plea agreement does not implicate Mr. Davis; as edited, it only implicates Mr. Ridings.  Thus, admitting the edited plea agreement does not violate Mr. Davis's Confrontation Clause rights.  Accordingly, the Court declines to exclude the edited plea agreement under *Crawford*.

### 3.  Rule 403 and a Limiting Instruction

Mr. Davis also argues that the edited plea agreement is unfairly prejudicial to Mr. Davis and that no limiting instruction can cure such prejudice.  Specially, Mr. Davis argues that from opening arguments onward, the jury will hear arguments that Mr. Davis and Mr. Ridings conspired together, and therefore the admission of the plea agreement will necessarily implicate Mr. Davis in the conspiracy.  The Court disagrees.  First, the edited plea agreement contains no references to Mr. Davis or to any agreement between Mr. Davis and Mr. Ridings, so on its face the edited plea agreement causes no prejudice— let alone unfair prejudice—to Mr. Davis.  Second, while *other* evidence admitted at trial may link Mr. Davis and Mr. Ridings, which may in turn create an inference that Mr. Ridings's admissions inculpate Mr. Davis, this does not strike the Court as unfairly prejudicial.  This is a normal part of a conspiracy case, where much of the evidence against one alleged co-conspirator may also be adverse to other alleged co-conspirators. The existence of the plea agreement does not appreciably intensify this dynamic.  Finally, the Court will cure any unfair prejudice by instructing the jury not to consider the plea agreement as evidence against Mr. Davis.  The Court acknowledges Mr. Davis's concern that this instruction will be ineffective, but the Court believes that because the plea

agreement no longer implicates Mr. Davis at all, the jury will be able to follow the Court's instruction.

### 4. Severance

As an alternative to the exclusion of the plea agreement, Mr. Davis argues that the Court should sever his trial from that of his co-defendant.  Specifically, Mr. Davis argues that the jury will not able to compartmentalize the evidence they hear against Mr. Ridings from Mr. Davis; in particular, Mr. Davis is concerned that once the jury hears about the signed plea agreement, it will be impossible for him to overcome the inference that he conspired with Mr. Ridings.  Furthermore, he argues that no limiting instruction can cure the spillover effect of the evidence presented against Mr. Ridings.   For the reasons explained below, the Court **DENIES** Mr. Davis's request to sever the trials.

Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of . . . defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  "Severance is appropriate if there is 'a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Wilkens*, 742 F.3d 354, 358 (8th Cir. 2014) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).  "[A] defendant seeking severance must show 'real prejudice,' that is 'something more than the mere fact that he would have had a better chance for acquittal had he been tried separately.'"  *United States v. Blaylock*, 421 F.3d 758, 766 (8th Cir. 2005) (quoting *United States v. Oakie*, 12 F.3d 1436, 1441 (8th Cir. 1993)).  "'To show real prejudice, the defendant must establish that '(a) his defense is

irreconcilable with that of his codefendant or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants.'" *United States v. Davis*, 534 F.3d 903, 916–17 (8th Cir. 2008) (quoting *United States v. Mickelson*, 378 F.3d 810, 818 (8th Cir. 2004)).

However, "[t]he Supreme Court has made it clear that the risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions . . . ." *United States v. Delpit*, 94 F.3d 1134, 1144 (8th Cir. 1996). Ultimately, even if prejudice is shown, Rule 14 does not necessarily require severance; rather, the decision whether to sever trials or to tailor some other form of relief is committed to the district court's discretion. *Zafiro*, 506 U.S. at 538–39; *United States v. Midkiff*, 614 F.3d 431, 440 (8th Cir. 2010).

The Court is not convinced that severance is necessary. First, all of the counts—except for Counts Three and Four—are charged against both Mr. Davis and Mr. Ridings, and the general rule is that persons charged with a conspiracy will be tried together. *United States v. Foote*, 920 F.2d 1395, 1398 (8th Cir. 1990). Second, there is no evidence Mr. Davis's anticipated defense is irreconcilable with Mr. Ridings's defense. Furthermore, as already discussed, the jury will be able to compartmentalize the impact of the signed plea agreement for two reasons: (1) it only directly implicates Mr. Ridings, and (2) the Court will instruct the jury that they may only consider the plea agreement against Mr. Ridings. Additionally, in a conspiracy case, each defendant may be held accountable for the actions taken by other defendants in furtherance of the conspiracy, so Mr. Ridings's alleged acts would likely be admissible against Mr. Davis in a separate trial. *See United States v. Darden*, 70 F.3d 1507, 1527 (8th Cir. 1995). Moreover, the Court will instruct the jury to consider each count against each defendant separately, which should further

reduce any spillover effect from a joint trial.  In sum, the Court sees no reason to believe that the jury will be unable to compartmentalize the evidence against the defendants. Accordingly, the Court finds that Mr. Davis has failed to establish that the jury will be unable to compartmentalize the evidence or that he will be prejudiced by a joint trial with his co-defendant.

### B.  Intrinsic Evidence or 404(b) Evidence

The Government has filed a Notice of Intent to Introduce Intrinsic Evidence or in the Alternative Rule 404(b) Evidence (Doc. 118).  Mr. Ridings has filed a Motion opposing the introduction of such evidence (Doc. 121).  For the reasons discussed below, Mr. Ridings's Motion (Doc. 121) is **DENIED**.

The Notice indicates that the Government intends to introduce evidence that in 2015, on behalf of Dragonfly, Mr. Davis and Cody Fell incurred various business expenses and failed to pay those expenses.  One such expense includes services from Audy Lack, an architect Mr. Fell allegedly hired to design a new office for Dragonfly in Elm Springs, Arkansas.  The Government also intends to introduce evidence that Mr. Davis entered into a contract with Environmental Consulting Operations, Inc. ("ECO") to assist Dragonfly with regulatory requirements for building and operating the wind turbines. According to the Government, both Mr. Lack and ECO contacted Mr. Davis for payment, and Mr. Davis represented that Dragonfly would soon pay.  The Government would also like to introduce evidence that Mr. Davis induced an investor to pay $10,000 to ECO so that ECO would continue their work.  In the end, according to the Government, Dragonfly owes Mr. Lack and ECO approximately $408,000 due to these unpaid expenses.

The Government contends that these facts are admissible because they are intrinsic to the charged conspiracy to commit fraud.  They argue that: (1) defendants used these expenses to fool investors into believing that Dragonfly was a legitimate business; (2) the existence of these expenses proves that defendants' diversion of funds from Dragonfly was fraudulent; (3) defendants' conduct towards these expenses demonstrates their knowing and intentional involvement in the fraudulent scheme; and (4) Mr. Davis's false promises in response to inquiries to pay shows that he intentionally concealed fraudulent conduct.  Alternatively, the Government argues that these expenses are admissible under Rule 404(b) because they are probative of criminal intent and knowledge.

In his response, Mr. Ridings argues that Dragonfly terminated Mr. Fell after he embezzled $100,000 and that Mr. Fell was no longer with Dragonfly when he entered into the contract with Mr. Lack.  Moreover, according to Mr. Ridings, Mr. Fell signed the agreement with Mr. Lack after Mr. Fell had already formed a new company separate and apart from Dragonfly.  As for the unpaid bill from ECO, Mr. Ridings argues that Dragonfly had cash flow problems due to an unexpected $58,000 bill from Belcan—an engineering firm hired by Dragonfly—and this is why ECO was not promptly paid.

While Rule 404(b) "excludes evidence of specific bad acts used to circumstantially prove a person has a propensity to commit acts of that sort," that rule "does not apply to evidence 'intrinsic' to the charged offense."  *United States v. Guzman*, 926 F.3d 991, 999 (8th Cir. 2019) (internal quotations and citations omitted).  "Intrinsic evidence is evidence of wrongful conduct other than the conduct at issue offered for the purpose of providing the context in which the charged crime occurred."  *Guzman*, 926 F.3d at 999–1000

(citation omitted) (cleaned up).   Intrinsic evidence "includes both evidence that is inextricably intertwined with the crime charged as well as evidence that merely 'completes the story' or provides context to the charged crime," but intrinsic evidence need not be "*necessary* to the jury's understanding of the issues" to be admissible.   *Id.* at 1000 (emphasis in original) (citing *United States v. Young*, 753 F.3d 757, 770 (8th Cir. 2014)).

The Eighth Circuit has held that evidence tying a defendant to a criminal conspiracy is intrinsic to the charged conspiracy.  For example, in *United States v. Ali*, the Government charged the defendants with a conspiracy to support a terrorist group, al Shabaab, and the defendants moved to exclude evidence of their contacts with other terrorists unrelated to the al Shabaab group.  779 F.3d 1008, 1027 (8th Cir. 2015).  The Eighth Circuit concluded that these contacts were intrinsic to the charged offense because the defendants spoke to the contacts about how to raise money for al Shabaab. *Id.*  Furthermore, in conspiracy cases, "evidence tending to make the existence of a conspiracy more probable" is relevant in that such evidence helps establish that the conspiracy existed.   *United States v. Maxwell*, 643 F.3d 1096, 1101 (8th Cir. 2011) (cleaned up) (citing Fed. R. Evid. 401).

Here, the evidence of the unpaid expenses is so blended and connected with the charged crimes that it qualifies as intrinsic evidence.  First, the Court notes the temporal overlap:  Mr. Fell incurred these expenses in 2015 during the same time the alleged conspiracy was ongoing.  Second, Mr. Fell allegedly incurred these expenses to further Dragonfly's operations in Elm Springs, including the wind turbines that are at the heart of this case.  As the Government contends, this evidence tends to demonstrate a course of behavior intended to deceive investors in order to solicit additional investments.  Such

evidence tends to show the defendants' intent, which is an essential element of the conspiracy charge.  For these reasons, the Court concludes that the Government's evidence that Mr. Fell and Mr. Davis incurred and failed to pay expenses to Mr. Lack and ECO is intrinsic to the charged conspiracy and is therefore not barred by Rule 404(b).  Of course, Mr. Ridings may cross-examine this evidence to refute its reliability or relevance to the elements of the charged offenses.

### C.  Motions to Continue

Mr. Ridings has filed three motions to continue due to the COVID-19 pandemic.  *See* Docs. 126, 134, 144.  Mr. Ridings argues that the currently circulating variants—in particular the "delta" variant—justify a continuance until 2022.  He suggests that masks and social distancing are ineffective at mitigating the risk of infection, and he demands that the Court satisfy itself that the COVID-19 vaccines are both safe and effective before allowing the trial to proceed.  Mr. Ridings also notes that he is at heightened risk from COVID-19 and that Mr. Davis has previously caught COVID and been exposed to the delta variant.

The Court declines to continue the trial and **DENIES** the motions to continue.  *See* Docs. 126, 134, 144.  The Government filed the original Indictment in this case in May 2019, and they filed the Superseding Indictment in January 2020.  This case was set for trial in April 2020, but the pandemic intervened, and the Court continued the trial until its present setting to avoid the worst of the pandemic—before vaccines became widely available.  Due to these long delays, the interests of justice weigh heavily in favor of holding the trial as soon as possible.  To prevent infection, the Western District of Arkansas has instituted an Administrative Order that will require everyone who enters the

courthouse for participating in or attending a jury trial to wear a mask.  *See* Admin. Order No. 2021-10.  Additionally, anyone entering the courthouse in Fayetteville is subject to a temperature check and must complete a questionnaire representing that they are free from COVID-19 symptoms and recent exposures.  The Court has also reconfigured its courtroom and jury box, installed plexiglass partitions in strategic locations, and undertaken a host of other measures to reduce of the risk of covid exposure.  And the Court will impose occupancy restrictions during *voir dire* and throughout the balance of the trial to further mitigate the risk of exposure.  While exposure risks cannot be eliminated, the Court believes that its mitigation strategy will allow the trial to be conducted in a safe and prudent manner.   Just this week, the Court completed a six-day criminal jury trial using these same precautions with no known covid exposures or actual infections.  Our community has adapted and continues to go about its business despite rising covid statistics.  Likewise, the court is part of this community and must go about its business too.

To the extent the parties are concerned about COVID-19, the Court notes that the most straightforward way for an individual to avoid a COVID-19 infection is to be vaccinated.  The vaccines authorized by the Food and Drug Administration are effective against COVID-19, including serious outcomes like severe disease, hospitalization, and death.[3]  Additionally, evidence suggests that the fully vaccinated are less likely to have asymptomatic infection or to transmit the virus to others.[4]  As for the delta variant, the

---

[3]  Centers for Disease Control and Prevention, Science Brief:  COVID-19 Vaccines and Vaccination (last accessed August 11, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.
[4]  *Id.*

New England Journal of Medicine recently published a study finding that that the two-dose regimen of the Pfizer-BioNTech vaccine is 88% effective at preventing symptomatic disease caused by the delta variant.[5]  All of this information suggests that vaccination is the best way to limit infections (and the spread of infections) amongst trial participants.

Finally, the Court notes that even if a COVID-19 exposure or infection occurs during trial, the Court will not necessarily grant a continuance.  In the Eastern District of Arkansas, Chief Judge D.P. Marshall Jr. is presiding over a multi-week criminal jury trial that began on July 23, 2021.  *See United States v. Gilbert Baker*, 4:19-cr-00031-DPM (E.D. Ark.).  On July 30th, one of the attorneys tested positive for COVID-19, so Judge Marshall recessed the trial until all trial participants returned with a negative COVID-19 test.  *Id.* at Doc. 104.  The trial reconvened on August 3, and jury is now deliberating.  In short, other federal courts in Arkansas have persevered in doing the people's business during the pandemic, and this Court intends to do the same.

### D.  Motion to Exclude Belcan Evidence

Mr. Ridings has filed a Motion in Limine to Exclude Belcan Evidence and Testimony and Brief in Support (Doc. 132), and the Government responded (Doc. 133), citing its prior briefings on the same issues.  Mr. Ridings argues that Belcan incorrectly concluded that Dragonfly's wind turbine would not work and therefore the introduction of evidence relating to Belcan's conclusions is unfairly prejudicial.  He also implies that some of the Belcan documents lack sufficient authentication.  For its part, the Government incorporates its prior briefings on these issues, wherein the Government argued that the

---

[5]  Jamie Lopez Bernal, *et al.*, Effectiveness of Covid-19 Vaccines against the B.1.617.2 (Delta) Variant, New England J. of Med. (July 21, 2021), https://www.nejm.org/doi/full/10 .1056/NEJMoa2108891.

evidence of Belcan's dealings with Dragonfly is relevant because the defendants used Belcan's involvement with Dragonfly to ensnare new investors.

In a prior Order (Doc. 113), the Court ruled that it would not suppress the evidence related to Belcan.  The Court sees no new arguments that convince it to reconsider that Order.  As the Court has already explained, the Belcan evidence is relevant because it tends to show that, after September 2015, the defendants knew that their representations to investors were untrue.  Such evidence may be prejudicial to defendants, but it is not *unfairly* prejudicial because the viability of the wind turbines—and defendants' beliefs about the same—is a central issue in this case.  Of course, Mr. Ridings is welcome to challenge Belcan's findings via cross-examination, and he should object if the Government attempts to introduce any documents without sufficient foundation.  For these reasons, Mr. Ridings's Motion in Limine (Doc. 132) is **DENIED**.

### E.  Government's Motion in Limine Regarding *Pro Se* Representation

In its Motion in Limine (Doc. 137), the Government argues that there is a risk that Mr. Ridings, who is proceeding *pro se*, will testify while questioning witnesses.  The Government asks that the Court admonish him not to testify unless he takes the stand.

The Court **GRANTS** the Government's Motion (Doc. 137).  At the final pre-trial conference, the Court will provide Mr. Ridings with an explanation of the rules governing his statements to jury.  Additionally, the Court does intend to instruct the jury on Model Criminal Jury Instruction 2.23, which instructs the jury that a *pro se* litigant's questions and arguments are not evidence.

### F.  Government's Motion for Witness to Testify at Trial
### Via Live Two-Way Video Conferencing

Finally, the Government has filed a Motion (Doc. 146) asking permission to allow witness Chibuzo Onyedim to testify at trial via live, two-way video conferencing.  The Government represents that, when the trial was set to begin on August 16, Mr. Onyedim scheduled a trip to Nigeria on August 25.  Now that the Court has rescheduled the trial to begin on August 23, he is no longer able to testify in-person.  The Government argues that he is an essential witness—paragraphs 15 and 16 of the Superseding Indictment identify him as a victim investor—and that he is capable of using Zoom to testify.  Mr. Ridings has filed a response in opposition (Doc. 148) arguing that video testimony is too unreliable for trial and that any remote testimony would violate his rights under the Confrontation Clause.

The Court **DENIES** the Government's Motion (Doc. 146).  The Federal Rules of Criminal Procedure do not explicitly permit trial testimony by videoconference.  *See* Fed. R. Crim. P. 26 ("In every trial the testimony of witnesses must be taken in open court, unless otherwise provided by statute or rules . . . .").  The Supreme Court has set forth a test for allowing video transmission testimony in *Maryland v. Craig*, but it cautioned that "the face-to-face confrontation requirement" should not "easily be dispensed with."  497 U.S. 836, 850 (1990).  While federal courts have applied the *Craig* test to allow child victims and defense witnesses to testify via videoconferencing technology, the Court harbors doubts that the Confrontation Clause allows an essential adult witness, called by the Government, to testify against a defendant through remote videoconferencing technology.  As Justice Scalia put it, "[v]irtual confrontation might be sufficient to protect

virtual constitutional rights; I doubt whether it is sufficient to protect real ones." *See* Order of the Supreme Court, 207 F.R.D. 89, 93–94 (2002).

Alternatively, the Court will entertain a motion from the Government to depose Mr. Onyedim via Rule 15.  Rule 15 provides that "a prospective witness [may] be deposed in order to preserve testimony for trial."  Fed. R. Crim. P. 15(a)(1).  The Court may grant such a motion "because of exceptional circumstances and in the interest of justice."  *Id.* Given the facts here, it appears that the requisite exceptional circumstances may exist to justify such a deposition.

### III. CONCLUSION

For the reasons discussed above, **IT IS ORDERED THAT**:

1.      The Government's Motion Seeking a Preliminary Ruling on the Admissibility of the Plea Agreement (Doc. 117) is **GRANTED** to the extent the Court finds that the edited plea agreement found at docket entry #140-1 does not facially violate *Bruton* or *Crawford*.  For the same reasons, Mr. Davis's Motion in Limine (Doc. 138) is **DENIED**;

2.      Mr. Ridings's Motion to Reject Intrinsic Evidence or, in the alternative, Rule 404(b) Evidence is **DENIED** (Doc. 121);

3.      Mr. Ridings's Motions to Continue (Docs. 126, 134, 144) are **DENIED**;

4.      Mr. Ridings's "Motion in Limine to Exclude Belcan Evidence and Testimony and Brief in Support" (Doc. 132) is **DENIED**;

5.      The Government's Motion in Limine (Doc. 137) is **GRANTED**;

6.      The Government's Motion for Witness to Testify at Trial Via Live Two-Way Video Conferencing (Doc. 146) is **DENIED**.

**IT IS SO ORDERED** on this 12th day of August, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE